UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



United States of America,

—v—

John Thompson,

           Defendant.

13-cr-378 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

    John Thompson moves for compassionate release pursuant to 18 U.S.C. § 3582(c). Mr. Thompson is fifty-three years old and suffers from hypertension, a medical condition that increases his risk of serious illness or death from COVID-19. This past September, the Court granted compassionate release to one of Mr. Thompson's co-defendants in light of the extraordinary circumstances of the COVID-19 pandemic. Since then, the COVID-19 outbreak at Fort Dix, where Mr. Thompson is incarcerated, has become even more dire. For the reasons that follow, the Court GRANTS Mr. Thompson's motion for compassionate release.

**I.    Background**

    Federal agents arrested Mr. Thompson, his uncle Louis Camper, and three others in a sting operation in April 2013 at the site of a planned robbery of drug dealers. *See United States v. Camper*, No. 13-cr-378 (AJN), 2020 WL 7647457, at *1 (S.D.N.Y. Sept. 2, 2020); Presentence Investigative Report, Dkt. No. 180, ¶¶ 12–25. Mr. Thompson pled guilty to conspiracy to commit Hobbs Act Robbery and conspiracy to distribute heroin and cocaine. Mr. Thompson's role in the planned robbery was to physically carry it out, while Mr. Camper

planned the operation. *See Camper*, 2020 WL 7647457, at *1; PSR ¶¶ 16–18. He told the confidential informant who approached him with a tip about the robbery that he had engaged in such robberies before, and he then gathered others to help him carry it out. PSR ¶ 16. This Court sentenced him to 188 months' imprisonment, the bottom of the Sentencing Guidelines range. Sentencing Tr., Dkt. No. 83, at 22. The Court observed that he had been "making an honest go of it" before being approached for the sting operation, but that he willingly engaged in the planned robbery once presented with the opportunity to do so. *Id.* at 20. Mr. Thompson has served just under eight years of his sentence. His projected release date is August 29, 2026.

Mr. Thompson submitted an administrative request for compassionate release to the warden of Fort Dix, which was denied in two responses dated October 9, 2020, and October 30, 2020. Thompson Br., Dkt. No. 196, Ex. A. He then filed a pro se motion for compassionate release, and the Court appointed counsel to represent him in connection with his motion. Dkt. Nos. 187, 189. Counsel has now filed a supplemental brief in support of his motion. Dkt. No. 196. The Government opposes the motion. Dkt. No. 197.

## II.    Discussion

The compassionate release statute provides a limited exception to the rule that "[f]ederal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed,'" *Freeman v. United States*, 564 U.S. 522, 526 (2011) (quoting 18 U.S.C. § 3582(c)). It allows a court to "reduce" a term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

The First Step Act of 2018, 132 Stat. 5194, 5239, authorizes a defendant serving their sentence to move the Court for compassionate release after they have exhausted their administrative remedies or thirty days have lapsed from the receipt of a compassionate release request by the warden. *United States v. Scparta*, No. 18-cr-578 (AJN), 2020 WL 1910481, at *4 (S.D.N.Y. Apr. 20, 2020). "Chief among the[] changes [made by the First Step Act] was the removal of the BOP as the sole arbiter of compassionate release motions." *United States v. Brooker*, 976 F.3d 228, 233 (2d Cir. 2020). The First Step Act grants district courts "broad" discretion to consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.* at 237.

To grant compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and find that "extraordinary and compelling reasons warrant" a reduction in sentence and that release would be consistent with any applicable policy statements issued by the Sentencing Commission. The Government does not contest that Mr. Thompson has exhausted his administrative remedies, and the Court so finds. *See* Thompson Br., Ex. A. The Court also finds that Mr. Thompson has satisfied the remaining criteria for compassionate release.

The Court begins by considering whether "extraordinary and compelling reasons warrant such a reduction [in sentence] . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). In *Brooker*, the Second Circuit held that the current version of U.S.S.G. § 1B1.13 does not apply to compassionate release motions other than those made on behalf of a prisoner by the BOP. *See Brooker*, 976 F.3d at 235–36. As a result, "[n]either Application Note 1(D), nor anything else in

3

the now-outdated version of Guideline § 1B1.13, limits the district court's discretion" in deciding a compassionate release motion brought directly by a prisoner. *Id.* at 237. The Court therefore looks to § 1B1.13 for guidance in the exercise of its discretion, but is free to consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.* Section 1B1.13, outlines several circumstances that constitute "extraordinary and compelling reasons" supporting a sentence reduction, including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A). The policy statement deems a prisoner's circumstances extraordinary and compelling only if the prisoner does not pose "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

As this Court has explained, the COVID-19 pandemic presents an extraordinary and unprecedented threat to incarcerated individuals. *See, e.g.*, *United States v. Williams-Bethea*, 464 F. Supp. 3d 562, 568 (S.D.N.Y. 2020); *Scparta*, 2020 WL 1910481, at *9; *United States v. Stephens*, 447 F. Supp. 3d 63, 65 (S.D.N.Y. 2020); *accord United States v. Nkanga*, 450 F. Supp. 3d 491, 492 (S.D.N.Y. 2020) ("The country faces unprecedented challenges from the novel Coronavirus ('COVID-19') pandemic. Those detained in jails and prisons face particularly grave danger."). This Court has found that even where a facility has not yet reported any confirmed COVID-19 cases, carceral conditions pose unique risks to vulnerable inmates because of the potential for the rapid introduction and spread of the disease. *See Williams-Bethea*, 464 F. Supp. 3d at 569.

At various stages during the pandemic, the Court has commented on the extremely troubling situation at Fort Dix.  *See, e.g.*, *United States v. Rodriguez*, No. 16-cr-07 (AJN), 2020 WL 7640539, at *4 (S.D.N.Y. Dec. 23, 2020) (noting that some inmates had been provided only a single disposable surgical mask since the beginning of the pandemic); *United States v. Fernandez*, No. 12-cr-844-9 (AJN), 2020 WL 7647459, at *3 (S.D.N.Y. Oct. 14, 2020) (discussing discrepancies in the Government's reporting of COVID-19 case counts at Fort Dix).  At present, the Bureau of Prisons reports more than fifty confirmed active COVID-19 cases among inmates and staff.  *See* Federal Bureau of Prisons, COVID-19, https://www.bop.gov/coronavirus/ (last visited Mar. 19, 2021).  Since the beginning of the pandemic, nearly two thousand inmates there have been infected—far more than any at other federal prison.  *Id.*  One inmate recently died.  *See* Thompson Br., Ex. B.  The situation appears to be as bad as ever, and certainly far worse than when this Court ordered the release of a similarly situated defendant in September.

Meanwhile, the Government contends that the Court should look past the apparently uncontrolled outbreak at Fort Dix because it has begun the process of vaccinating inmates.  Gov. Br., Dkt. No. 197, at 7.  However, it acknowledges that Mr. Thompson has not been vaccinated and that it can provide no estimate of when he would be.  *Id.*  Individuals like Mr. Thompson with hypertension have been eligible for vaccination in New Jersey, where Fort Dix is located, for some time.  *See* State of New Jersey, COVID-19 Information Hub (Mar. 15, 2021), https://covid19.nj.gov/faqs/nj-information/slowing-the-spread/who-is-eligible-for-vaccination-in-new-jersey-who-is-included-in-the-vaccination-phases.  Whatever the extent of the BOP's vaccination efforts, they appear woefully insufficient to protect vulnerable inmates.  The Court is

not persuaded that it should give weight to the prospect that the Government may, at some indeterminate date in the future, begin vaccinating inmates like Mr. Thompson.

Mr. Thompson is at high risk for serious illness or death from COVID-19. He is fifty-three years old and suffers from hypertension. The Court is puzzled by the Government's argument that only pulmonary hypertension, and not hypertension, is a risk factor for COVID-19. The CDC lists "hypertension or high blood pressure" among the conditions that may increase risk of serious illness or death from COVID-19. Centers for Disease Control and Prevention, Certain Medical Conditions and Risk for Severe COVID-19 Illness (Mar. 15, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Moreover, both New York (where this Court sits) and New Jersey (where Mr. Thompson is incarcerated) allow those with hypertension to be vaccinated as high-risk individuals. *See* New York State, Phased Distribution of the Vaccine, https://covid19vaccine.health.ny.gov/phased-distribution-vaccine (last visited Mar. 19, 2021); State of New Jersey, COVID-19 Information Hub (Mar. 15, 2021), https://covid19.nj.gov/faqs/nj-information/slowing-the-spread/who-is-eligible-for-vaccination-in-new-jersey-who-is-included-in-the-vaccination-phases. Considering Mr. Thompson's medical risk and the serious COVID-19 outbreak of Fort Dix, the Court concludes that Mr. Thompson has demonstrated extraordinary and compelling circumstances.

The Court next considers the factors set forth in 18 U.S.C. § 3553(a). Because this Court sentenced Mr. Thompson, the Court is intimately familiar with how these factors apply to his circumstances. In considering these factors, the Court is guided by its analysis in its decision granting Mr. Camper's motion for compassionate release. *See Camper*, 2020 WL 7647457, at

6

\*2. Both men participated in the same planned robbery. As the Court observed at sentencing, this was a very serious crime, involving the contemplated use of firearms. *See* Sentencing Tr. at. 19. The Court judged the two men's culpability for this serious crime to be roughly similar and sentenced each to a 188-month term. Although it now argues otherwise, the Government agreed at sentencing that they were equally culpable. *See* Sentencing Tr. at 11. Both had substantial prior criminal records, and yet both maintained spotless disciplinary records and completed educational courses during their nearly eight years in prison. *Id.* at \*3; Thompson Br., Ex. D. Both expressed sincere contrition for their offenses and appear to be striving to improve themselves. Mr. Thompson also points to letters of support from family members suggesting he will have a strong support system upon release. *See* Thompson Br., Ex. F.

The Court's 188-month sentence reflected the seriousness of Mr. Thompson's offense and was, at the time, sufficient but no greater than necessary to achieve the purposes of sentencing. However, the Court's analysis is different under current circumstances. Mr. Thompson has already served over half of his effective sentence. Over one year of this time was in the pandemic, during which inmates at Fort Dix have faced not only grave health risks, but also severe restrictions on visitation and movement within the facility. *See Rodriguez*, 2020 WL 7640539, at \*4. The time he has served has already achieved much of the original sentence's purpose. The Court has reconsidered the § 3553(a) factors in light of Mr. Thompson's history, his characteristics, and the present health risks of continued incarceration. It concludes those factors now support release.

After considering the extraordinary circumstances of the pandemic and the factors set forth in § 3553(a), the Court concludes that compassionate release is warranted, and so will

exercise its discretion to reduce Mr. Thompson's sentence.

## III. Conclusion

For the foregoing reasons, the Court GRANTS Mr. Thompson's motion for compassionate release. The Court resentences Mr. Thompson to time served plus four years of supervised release under the conditions in the original judgment. The mandatory conditions, standard conditions, and special conditions of supervised release from Mr. Thompson's original sentence are hereby imposed. The Court also imposes an additional condition of supervised release: Mr. Thompson is ordered to serve twelve months of the remaining portion of his original term of imprisonment under home detention.

The Government is ORDERED to release Mr. Thompson (BOP Reg. No. 68512-054) from custody immediately. It is FURTHER ORDERED that the parties shall meet and confer and submit a proposed order governing the conditions of the Mr. Thompson's release, including his period of fourteen days of self-isolation, no later than March 23, 2021.

SO ORDERED.

Dated: March 22, 2021
New York, New York

ALISON J. NATHAN
United States District Judge